# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| ROBERT J.,[1] | Case No. 2:23-cv-02469 |
| Plaintiff, | District Judge Michael H. Watson |
| vs. | Magistrate Judge Caroline H. Gentry |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## REPORT AND RECOMMENDATIONS[2]

Plaintiff filed an application for Supplemental Security Income (SSI) on November 7, 2017. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, an Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for resolution of several issues. On remand, a different ALJ held a hearing and issued a written decision, again concluding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review of that decision. Plaintiff subsequently filed this action.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, the undersigned Magistrate Judge recommends that the Commissioner's decision be AFFIRMED.

**I.  BACKGROUND**

Plaintiff asserts that he has been under a disability since December 31, 2007.[3] He was forty-four years old on the date that he filed his SSI application. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 416.964(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 54-80), Plaintiff's Statement of Errors ("SE," Doc. No. 8), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 9). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[3] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period of consideration in this case begins on November 7, 2017. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [Plaintiff] filed his protective application.").

2

## II. STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different

3

conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### III.  FACTS

#### A.  The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in

the Social Security Regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since November 7, 2017, the SSI application date. |
| Step 2: | He has the severe impairments of bipolar disorder, depressive disorder anxiety disorder, posttraumatic stress disorder (PTSD), schizoaffective disorder, schizophrenia, lumbar degenerative disc disease, and alcohol use disorder. |
| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 416.967(b), subject to the following limitations: "[H]e is able to understand, remember and carry out simple 1-2 step instructions. He is able to concentrate, persist and maintain pace for 2[-]hour intervals while performing simple tasks. He is able to occasionally interact with supervisors[] and coworkers but can have no interaction with the general public. He is able to adapt to routine changes in the workplace." |
| | He has no past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. |

(Decision, Doc. No. 7-2 at PageID 59-71.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not eligible for benefits. (*Id.* at PageID 72.)

5

### B. State Agency Psychological Consultants

State agency psychological consultant Laura Cutler, Ph.D. completed a Disability Determination Explanation form in March 2018. (AR, Doc. No. 7-3 at PageID 189-94.) Dr. Cutler found moderate impairment in all four "Paragraph B" areas of functioning. (*Id.* at PageID 189.) In the mental RFC section of the form, Dr. Cutler indicated that Plaintiff was markedly limited in the ability to interact appropriately with the general public. (*Id.* at PageID 193.) She otherwise opined that Plaintiff was moderately limited in the abilities of carrying out detailed instructions, maintaining attention and concentration for extended periods, working in coordination with or in proximity to others without being distracted by them, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the work setting. (*Id.* at PageID 192-94.) In terms of functional limitations, Dr. Cutler opined that Plaintiff was able to: understand, remember, and carry out simple one- and two-step instructions; sustain attention for two-hour segments for simple tasks; tolerate occasional (defined as one-third of the time) contact with coworkers and supervisors in nonpublic settings; and adapt to routine changes as needed within the preceding parameters. (*Id.* at PageID 194.)

Michelle Bornstein, Psy.D. reviewed the updated record at the reconsideration level in June 2018, and she essentially adopted Dr. Cutler's assessment (*Id.* at PageID 205-10.)

The ALJ concluded that the state agency psychological consultants' assessments were "persuasive." (Decision, Doc. No. 7-2 at PageID 70.) The ALJ explained that their

findings were "generally supported by and consistent with the record, which reflects adequate mental functioning for basic work-related activities despite his noncompliance with treatment recommendations (see 3F/5, 10F/8, 15F/5)." (*Id.*) By way of example, the ALJ cited a June 2018 mental status examination, "when [Plaintiff] was adhering to his treatment recommendations," that showed "a euthymic mood and normal exam findings." (*Id.* (citing AR, Doc. No. 7-7 at PageID 837).) The ALJ also cited the February 2018 report from consultative psychologist Dr. Green which documented "average intelligence, intact attention, normal remote and short-term memory with only mild impairments in concentration and immediate memory," and "cooperative and friendly [behavior] despite his complaints (4F/3)." (Decision, Doc. No. 7-2 at PageID 70 (citing AR, Doc. No. 7-7 at PageID 788).) Additionally, the ALJ cited treatment notes that "reflect[ed] that he was cooperative even when he was not taking his medication, though his eye contact was sometimes avoidant (e.g. 7F/6, 13F/11)." (Decision, Doc. No. 7-2 at PageID 70 (citing AR, Doc. No. 7-7 at PageID 804, 956).) The ALJ further explained that although the consultants did not review all of the evidence, "more recent evidence is of a similar character, with breaks in treatment, medication noncompliance, and varying mental status exam findings (13F/11, 15F/5, 16F/14)." (Decision, Doc. No. 7-2 at PageID 70 (citing AR, Doc. No. 7-7 at PageID 956, 1049; AR, Doc. No. 7-8 at PageID 1100).)

IV.     LAW AND ANALYSIS

Plaintiff asserts just one error: "The ALJ misconstrued the state agency expert's opinion when creating the RFC." (SSE, Doc. No. 8 at PageID 1212.) Specifically, Plaintiff contends that the ALJ erred because he found that the consultants' findings were

7

persuasive but did not adopt the consultants' proposed limitation that Plaintiff work in a non-public work setting. (*Id.* at PageID 1212.) According to Plaintiff, the ALJ's RFC limitation for "no interaction with the general public" is "materially different" from the consultants' limitation. (*Id.* at PageID 1213-14.) Plaintiff argues that "[t]he ALJ's failure to address this inconsistency makes it impossible to adequately review the ALJ's decision." (*Id.* at PageID 1215.) Because these assertions are not well-taken, the undersigned Magistrate Judge recommends that the Court affirm the Commissioner's decision.

    A.    **Applicable Law.**

Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 416.946(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). A claimant's RFC describes the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 416.945(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 416.945(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of his limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 416.945(a)(1)-(5).

Notably, "[t]he responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009)

(citing 20 C.F.R. § 404.1546(c)). An ALJ is required to consider medical opinion evidence when determining the RFC, but he is not required to adopt them or adopt any such findings verbatim. *Poe*, 342 F. App'x at 156-57 (6th Cir. 2009). In addition, "[t]he determination of a plaintiff's RFC is entirely within the purview of the ALJ, and this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-05858, 2021 WL 5881784, at *5 (S.D. Ohio Dec. 13, 2021) (internal quotations and citation omitted) (Preston Deavers, M.J.).

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of the SSA*, No. 3:21-CV-00129, 2022 U.S. Dist. LEXIS 175673, at *11 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers,

9

M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

### B. The ALJ Did Not Reversibly Err In Assessing Plaintiff's RFC.

Plaintiff's argument that the ALJ erred because he did not account for the psychological consultants' limitation to a "nonpublic setting" is not well-taken. The ALJ complied with applicable regulations when he found that the consultants' findings were persuasive—which Plaintiff does not dispute. For the reasons discussed below, the ALJ's RFC limitation for "no interaction with the general public" is supported by substantial evidence, and the ALJ's decision should be affirmed.

Defendants point to two cases from this district to support the assertion that the ALJ did not err by limiting Plaintiff to "no interaction with the general public." (Mem. In. Opp., Doc. No. 9 at PageID 1222-23 (citing *Slaughter v. Comm'r of Soc. Sec.*, No. 2:19-cv-4867, 2020 WL 2988468, at *8 (S.D. Ohio June 4, 2020) (Vascura, M.J.), *report and recommendation adopted*, No. 2:19-cv-4867, 2021 WL 1102617 (S.D. Ohio Mar. 23, 2021) (Sargus, D.J.); *Good v. Comm'r of Soc. Sec.*, No. 2:20-cv-3781, 2021 WL 4771262, at *6 (S.D. Ohio Oct. 13, 2021) (Deavers, M.J.), *report and recommendation adopted*, No. 2:20-cv-3781, 2021 WL 6134169 (S.D. Ohio Dec. 29, 2021) (Morrison, D.J.)).) The undersigned finds that both cases are persuasive.

In *Slaughter*, the state agency psychological consultant opined that Plaintiff "would be expected to be able to respond appropriately in a solitary/nonpublic work setting with occasional/intermittent interactions with coworkers and supervisors." 2020 WL 2988468, at *4. The court concluded that the ALJ did not err when he assigned

10

partial weight to the state agency psychological consultant's opinion and limited the plaintiff to "occasional interaction with supervisors and coworkers, but no interaction with the general public." *Id.* at *2, 7. The court reasoned that the ALJ explained why the plaintiff was not as limited as the consultant opined and cited to evidence in the record to support that conclusion. *Id.* at *8. The court also noted that, even if the ALJ had adopted the consultant's findings, he was "not required to recite the medical opinion of a physician verbatim in his [RFC] finding." *Id.* (citing *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009)). The court found that the ALJ's RFC sufficiently accounted for the consultant's opinion regarding the plaintiff's social interaction limitations and that "the ALJ was not required to offer an explanation for why he did not parrot [the consultant's] opined limitation verbatim." *Slaughter*, 2020 WL 2988468, at *8.

Similarly, the court in *Good* held that an ALJ did not reversibly err when she included an RFC limitation to "avoid interactions with the public" – despite assigning great weight to the state agency psychological consultants who opined that the plaintiff required "a separate work area in a non-public setting." 2021 WL 4771262, at *3, 6-7. First, the court rejected the plaintiff's argument that the consultants' findings equated to an opinion that the plaintiff required complete isolation, and it found that the ALJ's limitation regarding public interaction "properly incorporate[d]" the consultants' opinion. *Id.* at *6-7. The *Good* court also noted that "the ALJ was under no obligation to adopt the opinions verbatim." *Id.* at *6 (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is

11

no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.")). Second, the court concluded that the ALJ's RFC—and specifically the level of social interaction set forth in the RFC—was supported by substantial evidence. *Id.* at *7.

This case is particularly analogous to *Good.* Similar to the state agency psychological consultants in *Good*, the consultants in this case limited Plaintiff to work in "nonpublic settings." (AR, Doc. No. 7-3 at PageID 194, 209.) And much like the ALJ in *Good,* the ALJ here concluded that the consultants' findings were persuasive and limited Plaintiff to "no interaction with the general public" in the RFC. (Decision, Doc. No. 7-2 at PageID 62.) For the same reasons that the *Good* court articulated, the undersigned Magistrate Judge concludes that the ALJ's RFC limitation regarding public interaction "properly incorporates" the consultants' opinions. *Good*, 2021 WL 4771262, at *6. First, the ALJ was not required to adopt the consultants' limitation for "nonpublic settings" verbatim. *See id.* Second, the ALJ's RFC—specifically the limitation at issue for no interaction with the general public—is supported by substantial evidence. *See id.* at *7.

The ALJ acknowledged many of Plaintiff's subjective complaints related to his bipolar disorder, depressive and anxiety disorders, and schizophrenia in the decision, including social withdrawal and isolation, irritability, paranoia, anti-social tendencies, and some reports of homicidal ideation. (Decision, Doc. No. 7-2 at PageID 61, 63-64.) The ALJ also summarized the medical records that documented Plaintiff's treatment for his mental health symptoms. (*Id.* at PageID 60-62, 65-69.) The ALJ acknowledged that Plaintiff was involuntarily hospitalized in December 2017, shortly after the SSI

12

application date, for complaints of homicidal ideation and auditory hallucinations. (*Id.* at 65.) The ALJ noted that Plaintiff had been off medication for approximately two years prior to the admission. (*Id.*) The ALJ further noted that providers treated Plaintiff with medication for a bipolar-type schizoaffective disorder, and that Plaintiff tolerated the medications well. (*Id.* at PageID 65-66.)

The ALJ described a February 2018 consultative psychological evaluation and acknowledged Plaintiff's reports of irritability, anxiety, and hearing voices that "tried to make him harm others." (Decision, Doc. No. 7-2 at PageID 66.) Significantly, Plaintiff told the evaluating psychologist that "his persistent incarceration had been the biggest barrier to consistent employment." (*Id.*) The ALJ cited several abnormal mental status findings such as a depressed mood, paranoid ideation, poor judgment, and mildly impaired concentration and immediate memory. (*Id.*) The ALJ also cited other normal findings which included cooperative and friendly behavior, an appropriate appearance, normal psychomotor activity, unremarkable thought processes, adequate insight, intact attention, and normal remote and short-term memory. (*Id.*)

The ALJ then summarized Plaintiff's treatment after that time, which included several visits to behavioral urgent care centers and emergency departments, as well as several behavioral treatment intake evaluations. (Decision, Doc. No. 7-2 at PageID 67-69.) The ALJ acknowledged many of Plaintiff's subjective complaints which included rapid-cycling moods, paranoia, irritation, anger management issues, interpersonal difficulties, isolation, auditory hallucinations, depressive symptoms, anhedonia, panic attacks, insomnia, and suicidal ideation but with no plans. (*Id.*) The ALJ also

13

acknowledged many of the abnormal mental status findings that providers documented during these visits, such as avoidant eye contact, a depressed or anxious mood, anger and irritability, a flat affect, anhedonia, some impairment in immediate memory and attention, poor insight, distractibility, and thought process abnormalities that included flashbacks, paranoia, and rumination. (*Id.*) The ALJ compared this evidence to other examinations which showed a euthymic affect, good eye contact, appropriate dress, adequate grooming and hygiene, cooperative behavior, normal and articulate speech, normal psychomotor activity, intact attention, no memory problems, average estimated intelligence, fair to intact insight and judgment, no abnormal thought content, and organized, logical, linear, and goal-directed thought processes. (*Id.*) The ALJ further noted that Plaintiff denied suicidal ideation, homicidal ideation, and command hallucinations on several occasions. (*Id.*)

Moreover, in the "Paragraph B" analysis at Step Three, the ALJ specifically evaluated Plaintiff's ability to interact with others and explained why he found moderate—as opposed to marked—impairment in Plaintiff's ability to interact with others. (Decision, Doc. No. 7-2 at PageID 61.) The ALJ cited to many of the abnormal and normal findings discussed above. (*Id.*) The ALJ also noted that Plaintiff reported attending "a whole lot" of classes for a rehabilitation program, and that Plaintiff stated that he was able to use public transportation and go out alone. (*Id.*) The ALJ reasoned that this evidence showed "some ability to interact appropriately in public." (*Id.*) The ALJ balanced this evidence and concluded that Plaintiff experiences moderate limitation in the area of interacting with others. (*Id.*) Significantly, Plaintiff did not assert any errors

14

related to the ALJ's "Paragraph B" findings and has not alleged that the ALJ should have found marked impairment in this area. (*See generally* SE, Doc. No. 8.)

The ALJ concluded that the balance of the objective evidence did not support Plaintiff's allegations of disabling symptoms. (Decision, Doc. No. 7-2 at PageID 64-69.) Even so, the ALJ accounted for this evidence by limiting Plaintiff to simple, one- to two-step tasks that involve concentration for two-hour periods, occasional interaction with coworkers and supervisors, no interaction with the general public, and routine changes. (*Id.* at PageID 62 69.) Because the ALJ's limitation for "no interaction with the general public" is supported by substantial evidence, the ALJ did not err by failing to adopt verbatim the psychological consultants' limitation for a "nonpublic setting."

Plaintiff contends that the consultants' opinion and the ALJ's RFC limitation were "materially different from one another." (*See* SE, Doc. No. 8 at PageID 1213-14.) For the reasons discussed above, the ALJ's RFC limitation for no interaction with the general public "properly incorporates" the consultants' opinions that Plaintiff was limited to working in a non-public setting. *See Good*, 2021 WL 4771262, at *6. Plaintiff cites to a case from another district in this circuit to support the assertion that the limitations are distinctly different and that the ALJ's RFC "does not accurately reflect" the consultants' opinions. (SE, Doc. No. 8 at PageID 1214 (citing *Hawkins v. Comm'r of Soc. Sec.*, No. 5:20-cv-1245, 2021 WL 2227380, at *6-7 (N.D. Ohio, June 2, 2021)).) It is true that the vocational expert in that case testified that a "nonpublic setting" could have different meanings. *Hawkins*, 2021 WL 227380 at *7. But *Hawkins* is distinguishable. The ALJ in this case did not limit Plaintiff to a "nonpublic setting" – as discussed above he limited

15

Plaintiff to "no interaction with the general public." (Decision, Doc. No. 7-2 at PageID 62.) Additionally, the vocational expert at the October 2021 hearing did provide any testimony to clarify the scope of any of the ALJ's limitations like in *Hawkins*. (AR, Doc. No. 7-2 at PageID 112-14.) Instead, the vocational expert testified that a hypothetical individual of Plaintiff's age, education, and work experience—and with the ALJ's RFC for a reduced range of light work, including the limitation for no interaction with the general public—would be able to perform jobs in the national economy. (*Id.*) More importantly, as discussed above the ALJ was not required to adopt the consultants' limitations "wholesale" or verbatim. *See Good*, 2021 WL 4771262, at *6 (citing *Reeves*, 618 F. App'x at 275); *Slaughter,* 2020 WL 2988468, at *8 (citing *Poe*, 342 F. App'x at 157).

A disability claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 416.912. The burden is on a claimant to furnish medical and other evidence about his impairments and the effects of his impairments on the ability to work. *Id.* Here, Plaintiff has not shown that the ALJ erred by failing to include verbatim the consultants' limitation regarding public interaction. As discussed above, the ALJ thoroughly evaluated the medical evidence related to Plaintiff's impairments and explained his reasons for including the related functional restrictions in the RFC. Further, Plaintiff has not alleged that the ALJ committed any other errors. Plaintiff has not argued or shown that the evidence before the ALJ required the inclusion of different or greater limitations to account for any other difficulties related to Plaintiff's mental impairments. Nor has Plaintiff alleged that the ALJ erred when he relied on VE

16

testimony that accurately reflected Plaintiff's functional limitations. For these reasons, Plaintiff has not met his burden of proving that the ALJ's decision is unsupported by substantial evidence. The ALJ's decision should therefore be affirmed.

**IT IS THEREFORE RECOMMENDED THAT**:

    1.    Plaintiff's Statement of Errors (Doc. No. 8) be OVERRULED;

    2.    The Court AFFIRM the Commissioner's non-disability determination; and

    3.    The case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).